UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
BANK OF AMERICA, NATIONAL
ASSOCIATION, AS SUCCESSOR BY
MERGER TO LASALLE BANK NATIONAL
ASSOCIATION, AS TRUSTEE FOR THE     **MEMORANDUM & ORDER**
REGISTERED HOLDERS OF J.P. MORGAN     **09 CV 5296 (DRH)**
CHASE COMMERCIAL MORTGAGE
SECURITIES TRUST 2007-LDP 11,
COMMERCIAL MORTGAGE
PASSTHROUGH CERTIFICATES
SERIES 2007-LDP 11,

          Plaintiff,
  - against -

COMMACK PROPERTIES, LLC, and
JAY R. VIDERS,

          Defendants.
----------------------------------------------------------X
**HURLEY, Senior District Judge:**

Before the Court is a request by plaintiff that upon discharge of the Receiver in this action, the surplus net rental receipts in possession of the Receiver be turned over to plaintiff, instead of defendants. (Plaintiff's Letter Request ("Pl.'s Letter Req."), docket no. 53.) Plaintiff seeks possession of the rent receipts to cover plaintiff's mistaken payment of real estate taxes on the subject property for the month of May 2011. According to plaintiff, the taxes should have been paid by defendants under the settlement agreement. For the reasons set forth below, plaintiff's request is denied.

### BACKGROUND

Effective May 27, 2011, the parties entered into an agreement to settle this foreclosure action. Pursuant to the terms of that agreement, defendants were to pay plaintiff $4.5 million as

the "Discounted Settlement Amount,"[1] which constituted, by the terms of the agreement, "full satisfaction of the Indebtedness." (Settlement Agreement at 3, attached to Defendants' Opposition Letter ("Ds' Opp.") as Exhibit A.)

However, because the agreement—negotiated at the beginning of May 2011—would not go into effect until the end of that month, plaintiff wanted to ensure that the May real estate taxes were paid. Accordingly, acceptance of the Discounted Settlement Amount was conditioned upon defendant "[d]eliver[ing] to [the plaintiff] Lender . . . documentary proof reasonably acceptable to the Lender that real estate taxes are current as of the [agreement's] effective date [i.e. May 27, 2011]." (Settlement Agreement § 2(g).) Plaintiff contends that this clause leaves "no doubt that the Settlement Agreement contemplated that the Defendants would pay the real estate taxes on the property." (Pl.'s Reply at 2.) Nevertheless, as the result of what plaintiff describes as a "breakdown in [] communication" between the two servicers that manage plaintiff's mortgage securities (Pl.'s Reply at 2), plaintiff paid the May taxes directly to the local municipality in the amount of $68, 909.08, (Pl.'s Letter Req. at 1).

On an unspecified date, the defendant's paid plaintiff $4.5 million as required by the settlement agreement. Thereafter, on June 13, 2011, the parties signed a "Mutual Release" ("release") which contains the following relevant language:

> M. All terms and conditions set forth in the Settlement Agreement have been timely satisfied and the Parties desire to enter into this Mutual Release pursuant to the terms of the Settlement Agreement.
> . . .

---

[1] Under the agreement, the "Discounted Settlement Amount" includes $4.5 million dollars plus reimbursement of all reasonable attorney's fees and costs incurred by plaintiff in collecting on the defaulted loan and reaching a settlement. (Settlement Agreement § S at page 3.) Attorney's fees and costs were awarded to plaintiff in the amount of $19,491.24 on September 23, 2011. (*See* Order Adopting Report and Recommendation, docket no. 34 in case bearing docket 10-cv-25.)

2

> 2. . . . Lender hereby releases and forever discharges [defendants] from any and all causes of action, suits, liabilities, debts, damages, controversies, agreements, trespasses, judgments, executions, demands and claims of any nature whatsoever, whether in law or equity, whether known or unknown, and any and all rights, duties, obligations, whether presently enforceable or enforceable in the future, by reason of any matter or cause whatsoever from the beginning of time to the date of its execution of this release, which arise out of, are related to, or are in any way connected, directly or indirectly, with the Loan Documents or the Settlement Agreement."

(Mutual Release at 2-3, attached to Ds' Opp., docket no. 55, as Exhibit B.)

Despite the language of this release stating that all terms and conditions of the settlement agreement had been met, plaintiff now claims that "[d]efendant[s] did not remit sufficient funds at closing to cover the taxes." (Pl.'s Letter Req. at 1.) Plaintiff demanded reimbursement from defendants for the $68,909.08 tax payment, but the request went unheeded. (*Id.*) Aware that the Receiver is in the possession of approximately $31,000 in rental receipts from the subject property, plaintiff seeks a Court order here directing the Receiver to turn this surplus over to plaintiff to cover a portion of the money it paid to cover the May taxes.

## DISCUSSION

### I. SUMMARY PROCEEDINGS

As an initial matter, as the property at issue here has been under receivership, and as this particular dispute directly implicates the disposition of receivership assets, the Court has discretion to address plaintiff's application in a summary proceeding. *See Federal Deposit Ins. Corp. v. Bernstein*, 786 F. Supp. 170, 177 (E.D.N.Y. 1992)("[T]he use of summary proceedings in equity receiverships, as opposed to plenary proceedings under the Federal Rules [of Civil Procedure], is within the jurisdictional authority of a district court."(quoting *SEC v. Hardy*, 803

F.2d 1034, 1040 (9th Cir. 1986))); *see also Bernstein*, 786 F. Supp. at 178 ("This court is [ ] empowered to determine in a summary proceeding the rights and obligations of the parties to the contract, particularly when the issues presented involve a simple matter of contract interpretation."). "A summary proceeding reduces the time necessary to settle disputes, decreases litigation costs, and prevents further dissipation of receivership assets." *SEC v. Elliott*, 953 F.2d 1560, 1566 (11th Cir. 1992)(citing *SEC v. Wencke*, 783 F.2d 829, 837 (9th Cir.1986)). Both sides have presented their arguments on this issue, including the submission of a reply and sur-reply. (See docket nos. 53-57.)

## II.  THE SETTLEMENT AGREEMENT

Absent from the settlement agreement is any language authorizing plaintiff's instant request. Instead, the agreement provides that if the Discounted Settlement Amount is timely paid, the surplus rent receipts must be turned over to the defendants when the Receiver is discharged. (*See* Settlement Agreement §5 ["Lender confirms that if the Discounted Settlement Amount is timely paid, Lender shall not seek payment to Lender from the funds held by the rent receiver and Lender will promptly authorize the release of such funds in connection with any request of the Obligors."]).

The parties do not dispute that defendants timely remitted the Discounted Settlement Amount to plaintiff. But plaintiff, in seeking the rental receipts held by the Receiver, focuses its argument on subsection 2(g), previously quoted, wherein acceptance of the Discounted Settlement Amount is conditioned on proof from defendants that the May taxes have been paid. However, notwithstanding plaintiff's protestations to the contrary, defendants' obligation under that subsection is one of production, not payment. Simply put, proof that the real estate taxes for

4

May were paid is all that is required. Nothing in subsection 2(g) suggests that the source of the payment is germane.

In an effort to demonstrate that the true intent behind this provision was to require defendants to foot the tax bill, plaintiff cites an email exchange between parties' counsel in mid-May, i.e. prior to the agreement's effective date of May 27th, wherein defendants, through counsel, conceded that they owed $68,909.08 for the May taxes. (*See* Emails dated May 12 and 13, 2011, attached to Pl.'s Letter Req. as Exhibit A.) In deciding this issue, however, the Court may not consider the content of these emails. Under the parol evidence rule, for the Court to review extrinsic evidence in a dispute over the language of what appears to be a wholly integrated agreement,[2] the subject provision—here, subsection 2(g) pertaining to the payment of taxes—would have to be ambiguous. *Curry Road Ltd. v. K Mart Corp.*, 893 F.2d 509, 511 (2d Cir. 1990)("Only when the language of the contract is ambiguous may a court turn to extrinsic evidence of the contracting parties' intent." (citing *International Klafter Co. v. Continental Casualty Co.*, 869 F.2d 96, 100 (2d Cir. 1989))). "An ambiguity exists where the terms of the contract could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement . . . ." *Law Debenture Trust Co. v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010). There is nothing ambiguous about the language of subsection 2(g): as noted, the provision plainly requires that defendants provide proof that the taxes are current for the month of May, nothing more. In sum, the mid-May email exchange may not be considered in resolving the dispute over the meaning of subsection 2(g).

---

[2] Here, not only does the settlement agreement appear to be complete on its face, but it contains a merger clause. (Settlement Agreement §10(o) ["Integration. This Agreement, all documents executed in connection herewith, and all of the Loan Documents constitute the entire agreement between the parties, and supersede all prior agreements and understandings, both written and oral, between the parties with respect to the subject matter hereof."].)

5

Accordingly, the Settlement Agreement does not provide for the relief sought by plaintiff herein.

### III. THE MUTUAL RELEASE

*a. Mistake*

In their opposition letter, defendants argue that "plaintiff [] cannot claim mistake in seeking to vitiate the General Release executed in favor of Defendants." (Ds' Opp. at 3.) Plaintiff responds only briefly in its reply, stating that "the facts here demonstrate that there was never an intent by either party to release the claim for the mistaken payment," and citing to a case involving rescission of a release on the grounds of mutual mistake. (Pl.'s Reply at 3 (citing *Steen v. Bump*, 233 A.D.2d 583 (3d Dep't 1996).) Although, this theory of relief was raised by defendants, instead of plaintiff, the Court will nevertheless address the issue below.

Under New York law, generally, a claim for rescission of a written contract "must be grounded upon either mutual mistake or fraudulently induced unilateral mistake" *Greater N. Y. Mut. Ins. Co. v. United States Underwriters Ins. Co.*, 36 A.D.3d 441, 443 (1st Dep't 2007)(citing *Chimart Assocs. v Paul*, 66 N.Y.2d 570, 573, 489 N.E.2d 231 (1986)). Plaintiff does not argue that the "mistake" was mutual, nor does it allege the existence of an oral contract antedating the mutual release – a prerequisite to the claim here for mutual mistake. *See Chimart*, 66 N.Y.2d at 573 ("In a case of mutual mistake, the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement.")

Plaintiff also does not allege fraud or other misrepresentation on the part of defendants at the time the release was signed, which would be necessary to rescind the release under a theory of unilateral mistake. However, as noted above, defendants did concede in the May email

exchange that they were responsible for paying the May taxes under the settlement agreement. To the extent that plaintiff may argue that defendants somehow knew that the taxes had been paid by plaintiff and fraudulently concealed this fact when signing the mutual release—and, notably, no such allegation has actually been asserted by plaintiff—such a claim would necessarily fail. In order to make a claim for fraudulent concealment a plaintiff must show that he "actually relied on the disclosure or lack thereof," *Banque Arabe et Internationale D'investissment v. Maryland Nat'l Bank*, 57 F.3d 146, 156 (2d Cir. 1995), and that such reliance was "reasonable or justifiable," *Bermuda Container Line Ltd. C. Int'l Longshoremen's Ass'n*, 192 F.3d 250, 258 (2d Cir. 1999). "[W]here a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence and fails to make use of those means, he cannot claim justifiable reliance on the other party's misrepresentations." *Miller v Icon Group LLC,* 77 A.D.3d 586, 588 (1st Dep't 2010)(citation and internal punctuation omitted); *see Banque Arabe*, 57 F.3d at 157-58 (disallowing a fraudulent concealment claim where plaintiff had access to information that would have made the alleged concealment known before entering into the agreement, but where failed to retrieve and examine that information).

Plaintiff concedes that it was the bank's own servicers who mistakenly made the tax payment. Knowledge of this transaction was therefore uniquely available to plaintiff through reasonable inquiry. Plaintiff, however, failed to perform the necessary due diligence to determine the source of the tax payment before it entered into the release with defendants which declared that "[a]ll terms and conditions set forth in the Settlement Agreement have been timely satisfied." (Mutual Release at 2.) Therefore to the extent that plaintiff argues that the release should be rescinded under a theory of unilateral mistake by fraudulent concealment, such a claim is not available here as a matter of law.

### b. Payment-by-Mistake and Unjust Enrichment

Finally, in its reply, plaintiff raises for the first time claims that it is entitled to reimbursement for the accidental tax payments under two additional theories that do not question the viability of the release itself: payment by mistake and unjust enrichment. (Pl.'s Reply at 2 (citing *T.D. Bank, N.A. v. JP Morgan Chase Bank, N.A.*, No. 10-CV-2843, 2010 U.S. Dist. LEXIS 109471 (E.D.N.Y. Oct. 14, 2010), and *Banque Worms v. Bank America Int'l*, 77 N.Y.2d 362, 570 N.E.2d 189 (1991)).) The Court, however, need not reach the merits of these claims because both are vitiated by the parties mutual release, in which the parties released their opponents from all claims "known or unknown," "presently enforceable or enforceable in the future," which "arise out of, or are related to or are in any way connected, directly or indirectly, with the Loan Documents or the Settlement Agreement." (Mutual Release at 2-3.)

Plaintiff's present claim rests on the argument that defendants are obligated to remit payment of the May taxes pursuant to subsection 2(g) of the Settlement Agreement. But the mutual release states that "[a]ll terms and conditions set forth in the Settlement Agreement have been timely satisfied." Moreover, because plaintiff's claim clearly "arise[s] out of," and is "related" and "connected" to the agreement, it is within the ambit of, and therefore vitiated by, the terms of the parties' mutual release. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Walton Ins. Ltd.*, 696 F. Supp. 897, 901 (S.D.N.Y. 1988)("It is well-settled that a valid release constitutes a complete bar to an action on a claim which is the subject of the release."); *Omaha Indemnity Co. v. Johnson & Towers, Inc.*, 599 F. Supp. 215, 220 (E.D.N.Y. 1984)(applying New York law); *Najjar Industries, Inc. v. City of New York*, 57 N.Y.2d 647, 648, 439 N.E.2d 874 (1982); *accord, Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991); *see also Waksman v.* Cohen, No. 00 Civ. 9005, 2002 U.S. Dist. LEXIS 21209(S.D.N.Y. Nov. 5,

2002)("Since [Plaintiff] expressly and unambiguously agreed to release those claims . . . which could have been raised in the [previous] Action, even if they were 'unknown' to him at the time of the settlement, the Plaintiff cannot now avoid the effect of the Stipulation and Settlement and release of claims by arguing that the Stipulation and release do not apply to claims which were then unknown to him."); *Jabara v. Songs of Manhattan Island Music Co.*, No. 86 CV 3412, 1989 U.S. Dist. LEXIS 1727, *17(S.D.N.Y. Feb. 24,1989)(rejecting plaintiff's argument he was "unaware at the time of the termination agreement" that defendant improperly reduced a payment to plaintiff because the general release covered claims "known or unknown to [plaintiff]"); *Centro Empresarial Cempresa S.A. v America Movil, S.A.B. de C.V.*, 17 N.Y.3d 269, 273, 952 N.E.2d 995 (2011)(holding that that the plaintiffs' claims, which included unjust enrichment for defendants' misleading information about the value of plaintiffs' shares in a closely held corporation, were waived by the release plaintiffs entered into with defendants as a condition of plaintiffs' sale of those shares).

## IV. EQUITABLE CONSIDERATIONS ASSERTED BY DEFENDANTS

Having already held that plaintiff is not entitled to possession of the surplus rental receipts, the Court need not reach defendants' argument that plaintiff did not act equitably during the period of settlement negotiations. (*See generally,* Pl.'s Reply and Sur-Reply.)

## CONCLUSION

For the reasons indicated, plaintiff is not entitled to the surplus rent receipts collected by the Receiver. The Receiver shall therefore provide those funds to the defendants as agreed upon

by the parties in their settlement agreement, and as directed in the Court's October 27, 2011 Order discharging the Receiver.

SO ORDERED.

Dated: Central Islip, New York
      November 4, 2011                             /s
                                              Denis R. Hurley
                                              Unites States District Judge